**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

**OCAL RAY SMITH, II,**

     **Plaintiff,**

**v.**                                                              **Case No.** 7:19cv671

**AMERICAN ELECTRIC POWER**
**SERVICE CORPORATION,**
                                                                    **JURY TRIAL DEMAND**
**Serve:**
     **CT Corporation System,**
     **Registered Agent**
     **4701 Cox Road, Suite 285**
     **Glen Allen, VA 23060**

**and**

**APPALACHIAN POWER COMPANY,**

**Serve:**
     **CT Corporation System,**
     **Registered Agent**
     **4701 Cox Road, Suite 285**
     **Glen Allen, VA 23060**

     **Defendants.**

## COMPLAINT

COMES NOW, Plaintiff Ocal ("Bubba") R. Smith, II (hereinafter, "Mr. Smith" or "Plaintiff"), by counsel, and states as his Complaint against Defendant American Electric Power Service Corporation (hereinafter, "AEP") and Defendant Appalachian Power Company (hereinafter, "APCo") (collectively, "Defendants"), the following:

### I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter as it arises from the federal questions presented by the Family and Medical Leave Act, as codified under Title 29

U.S.C. §§ 2601 *et seq.* ("FMLA"), and the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADA"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

2.      This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the acts and/or omissions giving rise to Plaintiff's claims pursuant to Va. Code § 40.1-51.2:1 and Plaintiff's emotional distress claims arose from the same basis of operative fact and same controversies under the law. Pursuant to 28 U.S.C. § 1367(a), these claims are so related to claims involving original jurisdiction that they form part of the same case or controversy.

3.      Venue is appropriate as the acts and/or omissions of Defendants from which the causes of action arise, occurred within the Western District of Virginia. *See* 28 U.S.C. § 1391(b)(2).

4.      Due to its contacts within the Commonwealth of Virginia, Defendants avail themselves to the jurisdiction of this Court.

5.      As it relates to Plaintiff's ADA claims, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants on or around May 23, 2019. Plaintiff received a Dismissal and Notice of Rights from the EEOC dated July 16, 2019 for each Defendant, attached hereto as **EXHIBIT A**. Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

6.      Mr. Smith, a resident of Radford, Virginia, was hired by Defendants on or around August 26, 2002. After working for several years at Defendants' Christiansburg, Virginia facility, Mr. Smith worked on a consistent, full-time basis at Defendants' Pulaski,

Virginia facility, located at 4600 Newbern Road, Pulaski, Virginia 24301, until his unlawful termination from employment, which occurred on or about March 14, 2019.

7.   AEP, a public utility holding company that engages in the business of generation, transmission, and distribution of electricity, is one of the largest power generators and distributors in the United States, and is headquartered in Columbus, Ohio.

8.   APCo, a wholly owned subsidiary of AEP, offers electric power services and is headquartered in Charleston, West Virginia.

### III. FACTUAL ALLEGATIONS

9.   In or around August of 2002, Mr. Smith began working for Defendants as a Lineman, at a payrate of $36.50 per hour, exclusive of other employment-related benefits. At the time of his termination, Mr. Smith held the title of Journeyman, at the payrate of $39.86 per hour, exclusive of employment-related benefits.

10.   During his employment with Defendants, Mr. Smith's work performance was excellent, and met or exceeded Defendants' legitimate business expectations.

11.   At all times relevant, Mr. Smith suffered from several ADA-recognized disabilities/serious health conditions, including degenerative shoulder and back issues, which, upon information and belief, were caused by the physically punishing nature of his job.

12.   Additionally, Mr. Smith suffers from anxiety and depression, which also are ADA-recognized disabilities/serious health conditions.

13.   Mr. Smith's disabilities/serious health conditions affect his daily life activities, including, but not limited to, standing, lifting objects, sitting, and sleeping.

14.     However, at all times relevant, Mr. Smith could perform the essential functions of his position(s) with Defendants with or without an accommodation for these disabilities/serious health conditions.

15.     In or about July of 2016, when Mr. Smith was first diagnosed with his degenerative shoulder and back issues, he underwent a surgery that necessitated a six month, non-working recovery period.

16.     Accordingly, Mr. Smith notified his AEP/APCo supervisors of his health issues, and specifically sought appropriate guidance from Defendants with regard to his disabilities/serious health conditions and related requests for accommodations, including but not limited to, post-surgery FMLA leave.

17.     Accordingly, in or about 2016, Defendants had knowledge of Mr. Smith's disabilities/serious health conditions, thus triggering Defendants' duty to advise Mr. Smith of his rights and obligations under the FMLA and/or ADA.

18.     Upon Mr. Smith's post-surgery return to work, he observed several serious safety issues and related safety violations occurring at his worksite and, on or about February 2, 2017, Mr. Smith emailed APCo Vice President Christian Beam to relay his concerns about being forced to "do unsafe work and to break our safety manual along with OSHA's rules." *See* February 2-6, 2018 email correspondence between O. Smith and C. Beam, attached hereto as **EXHIBIT B**.

19.     Similarly, on February 20, 2018, Mr. Smith sent a letter to AEP President Nick Akins that detailed Mr. Smith's numerous confrontations with Distribution Line Coordinator Junior Edwards regarding these unsafe work practices. Specifically, and as summarized in Mr. Smith's letter to Mr. Akins, Mr. Smith observed colleagues working in

an elevated bucket lift during fifty-five (55) mile per hour winds. *See* February 20, 2018 letter to N. Akins, attached hereto as **EXHIBIT C**.

20.     In his letter to Mr. Akins, Mr. Smith also described a discriminatory and retaliatory culture at AEP/APCo and observed, "if you are safety conscious, then you get punished for it and harassed."

21.     Mr. Smith opposed working in such hazardous and discriminatory conditions, but was directed by Mr. Edwards – and other AEP/APCo supervisors – that he (Mr. Smith) was required to continue working in an unsafe environment.

22.     Indeed, Mr. Smith's multiple complaints were never remedied, or even addressed, by Defendants. Instead, Defendants responded to Mr. Smith's complaints by retaliating against him and, ultimately, terminating his employment.

23.     Specifically, approximately one month after Mr. Smith sent his letter concerning workplace safety complaints to Mr. Akins, in or about March of 2018, complications related to Mr. Smith's  disabilities/serious health conditions necessitated that he not lift heavy equipment or perform similar workplace tasks.

24.     Accordingly, Mr. Smith requested the reasonable accommodation of a job transfer, and to work as an instructor with Defendants' lineman training school.

25.     This instructor position would allow Mr. Smith to not lift heavy equipment or perform other tasks that would negatively impact his disabilities/serious health conditions.

26.     Mr. Smith was qualified for this open instructor position, and was familiar with the job responsibilities, as he had assisted with the initial implementation of the lineman training school.

27.     Mr. Smith officially requested the job transfer, and completed all necessary application paperwork in or about March of 2018.

28.     However, Defendants, without legitimate reason, denied Mr. Smith's requested transfer.

29.     Upon information and belief, Defendants' failure to hire Ms. Smith for an open instructor position was due to Defendants' discriminatory animus towards Mr. Smith's disabilities/serious health conditions and/or requests for FMLA leave and/or requests for accommodations and/or in retaliation for his safety complaints.

30.     Understandably, the discriminatory and retaliatory treatment Defendants levied against Mr. Smith caused him significant stress, exacerbated his disabilities/serious health conditions, and created a more difficult working environment.

31.     As a result, and shortly after Defendants failed to hire Mr. Smith for the open instructor position, Mr. Smith requested, and was approved for, an accommodation to take unpaid leave to treat his increasing anxiety and depression.

32.     Additionally, in or about August of 2018, Mr. Smith requested an accommodation to take leave to begin physical therapy on his right shoulder and, in or about October of 2018, Mr. Smith requested, and was approved for, FMLA leave to undergo necessary shoulder surgery for his disabilities/serious health conditions.

33.     Mr. Smith's surgery was successful and, on or about December 11, 2018, Mr. Smith's medical team released Mr. Smith back to work with light duty restrictions.

34.     Mr. Smith, accordingly, requested from Defendants the accommodation of performing light duty workplace tasks, including truck driving and/or or operating controls on "cherry pickers."

35.     However, Defendants, without legitimate reason, denied Mr. Smith's light duty requests.

36.     Instead, Mr. Smith's supervisors informed Mr. Smith that he would not be permitted to return to work until he was released to perform all full duty tasks assigned to him and Mr. Smith, as a result, remained on unpaid leave from his employment with Defendants.

37.     Upon information and belief, other similarly situated employees of Defendants were permitted to perform light duty work assignments, such as driving trucks, when such accommodations were requested, as light duty restrictions do not provide an undue hardship for Defendants.

38.     Upon information and belief, Defendants' failure to permit Mr. Smith to return to work with light duty restrictions was again due to Defendants' discriminatory and retaliatory animus towards Mr. Smith's disabilities/serious health conditions and/or requests for FMLA leave and/or requests for accommodations and/or in retaliation for his safety complaints.

39.     On December 11, 2018 and January 22, 2019, at the direction of Mr. Smith, Crystal Smith, Mr. Smith's wife, submitted additional safety complaints to Mr. Akins. *See* December 11, 2018 and January 22, 2019 letters to N. Akins, attached hereto as **EXHIBIT D**.

40.     In her December 11, 2018 letter, Ms. Smith detailed how bucket truck operators violate AEP/APCo's own safety rules regarding "three points of contact" in order to follow the directives of supervisors. She also provided details regarding how employees were forced to work in unsafe, high-wind conditions in March of 2018, and

how an employee was permitted to work on a power line without safety gloves, in violation of stated safety protocol.

41.     Ms. Smith's January 22, 2019 letter also stated: "It's not fair how these men are being pushed and the safety issues aren't being confronted."

42.     Again, Defendants refused to address these legitimate safety complaints, but instead retaliated against Mr. Smith.

43.     Specifically, on or about March 8, 2019, Mr. Smith informed Vice President of Human Resources Tracy Elich via voicemail that he would be released by his physician from light duty work on March 12, 2019, and that Mr. Smith would like to return to work.

44.     Mr. Smith did not receive a response from Ms. Elich – or any other individual employed with Defendants' Human Resources department – concerning his return to work.

45.     On March 12, 2019, Mr. Smith again called Defendants' Human Resources department to inform his employer that Mr. Smith's physician had cleared him to return to work and perform full duty tasks.

46.     However, Defendants' Human Resources department again ignored Mr. Smith's inquiries about returning to work.

47.     Of note, as a general policy, Defendants' Human Resources department instructs its employees returning from FMLA and/or light duty work restrictions to receive a physical from AEP/APCo's retained workers compensation physician and submit related paperwork after the employee's physician clears them to return to work.

48.     Mr. Smith did not receive such instruction from Defendants.

49.     On March 14, 2019, two days after Mr. Smith contacted Defendants for the second time about returning to full duty work, Defendants abruptly terminated Mr. Smith's employment.

50.     Specifically, on March 14, 2019, Distribution Operations Director Scott Chambers mailed a termination letter to Mr. Smith, received by Mr. Smith on March 16, 2019, that highlighted Mr. Smith's engagement in protected workplace activities, and references Mr. Smith's safety complaints – falsely characterizing them as "repeated, unfounded attacks on co-workers and management." *See* March 14, 2019 letter to O. Smith, attached hereto as **EXHIBIT E**.

51.     On March 15, 2019, Mr. Chambers called Mr. Smith to inform him that "I don't want you here or on any AEP properties."

52.     Upon information and belief, Defendants targeted and discriminated against Mr. Smith, and terminated his employment, in retaliation for Mr. Smith's requests for, and use of, federally protected accommodations and related leave to manage his disabilities/serious health conditions and/or for making safety complaints.

53.     Upon information and belief, no business-related legitimate reason justified the actions Defendants took against Mr. Smith, as Mr. Smith's work performance was excellent and, until he requested federally protected leave and related accommodations to treat his disabilities/serious health conditions and complained about workplace safety issues, he never received any discipline from his employer.

54.     Accordingly, Mr. Smith's termination was merely a pretext to unlawful discrimination and retaliation by Defendants, as Mr. Smith's termination occurred under circumstances that raise a reasonable inference of unlawful discrimination, retaliation, interference, and Defendants' failure to accommodate Mr. Smith, based upon his

disabilities/serious health conditions, and/or requests for leave and/or reasonable accommodations, and/or complaints concerning workplace safety issues.

55.     Indeed, the short temporal proximity between the time Mr. Smith requested leave and accommodations and made legitimate safety complaints, and his termination, supports Mr. Smith's claims against Defendants.

56.     Because the actions taken by Mr. Smith's supervisors, and other employees of Defendants, were taken within the scope of their employment, Defendants are responsible for their actions based upon the doctrine of *respondeat superior*.

57.     After his termination, Mr. Smith struggled to find work in his industry due to AEP's ban of Mr. Smith from being upon AEP property.  However, on or about August 21, 2019, Mr. Smith found employment albeit, with lower pay and benefits, with MasTec.

58.     Mr. Smith worked at MasTec continuously from on or about August 21, 2019 until his termination from MasTac on September 6, 2019.

59.     On September 6, 2019, Mr. Smith worked at a Wytheville, Virginia job site.  At no time on September 6, 2019 - - or upon any other date in which Mr. Smith worked for MasTec - - did Mr. Smith tread upon AEP property.

60.     Despite this, Mr. Smith was seen working with his crew by AEP employee Stacy Hardin.  Approximately two hours later, Mr. Smith's foreman at MasTec received a call from an AEP representative that stated that Mr. Smith could not perform services for MasTec.

61.     MasTec, under threat from AEP and at the direction of AEP, terminated the employment of Mr. Smith.  This termination would not have resulted if Mr. Smith had not engaged in lawfully protected activities nor claimed membership in lawfully protected classes.

62.     After his termination, Mr. Smith was eventually able to be re-employed by MasTec, but not as a lineman, his preferred position.  He continues to suffer less pay and benefits in comparison to his job with AEP.

## COUNT I: CLAIM FOR DISCRIMINATION
## AND RETALIATION IN VIOLATION OF THE FMLA

63.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint.

64.     Defendants are: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

65.     Plaintiff worked for Defendants for nearly 17 years, and worked more than 1,250 hours during the twelve (12) month period immediately preceding his termination.

66.     Plaintiff properly notified Defendants of his disabilities/serious health conditions, and of his need for FMLA-qualifying leave, to which he was entitled, to seek treatment and surgery for his disabilities/serious health conditions.

67.     Defendants discriminated against Plaintiff by improperly denying him federally protected FMLA rights, retaliating against him for attempting to exercise the substantive FMLA rights to which he was entitled, and treating him differently, and less favorably, than similarly situated employees not exercising FMLA rights, resulting in Plaintiff's termination from employment.

68.     Defendants would not have terminated Plaintiff, or taken other discriminatory and retaliatory actions against him, but for Plaintiff's requests related to, and use of, FMLA leave.

69.     Any reasons given by Defendants for their treatment of Plaintiff were pretextual, as Plaintiff's work performance was excellent.

70.     Defendants' discriminatory and retaliatory conduct prejudiced Plaintiff in that he lost compensation and benefits, sustained other monetary losses, and suffered the loss of his employment as a direct result of Defendants' violation.

71.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

72.     At all times material hereto, Defendants engaged in unlawful or discriminatory practices with bad faith, malice, or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

73.     The above-described acts by Defendants and employees of Defendants constitute unlawful discrimination and/or retaliation in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq*. ("FMLA").

## COUNT II: CLAIM FOR INTERFERENCE WITH FMLA RIGHTS

74.      Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint.

75.     Defendants are: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

76.     Plaintiff worked for Defendants for nearly 17 years, and worked more than 1,250 hours during the twelve (12) month period immediately preceding his termination from employment.

77.     Plaintiff properly notified Defendants of his disabilities/serious health conditions, and of his need for FMLA-qualifying leave, to which he was entitled, to seek treatment and surgery for his disabilities/serious health conditions.

78.     Defendants interfered with Plaintiff's use of FMLA leave by treating him differently, and less favorably, than similarly situated employees not exercising FMLA rights, thus impeding Plaintiff's exercise of his FMLA rights, and ultimately resulting in Plaintiff's termination from employment.

79.     Defendants' interference prejudiced Plaintiff in that he lost compensation and benefits, sustained other monetary losses, and suffered the loss of his employment as a direct result of Defendants' violation.

80.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

81.     At all times material hereto, Defendants engaged in unlawful or discriminatory practices with bad faith, malice, or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

82.     The above-described acts by Defendants and employees of Defendants constitute unlawful interference with Plaintiff's rights in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq*. ("FMLA").

**COUNT III: CLAIM FOR DISCRIMINATION
AND RETALIATION IN VIOLATION OF THE ADA**

83.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint.

84.    At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability, pursuant to the ADA.

85.    Specifically, and at all times relevant, Plaintiff suffered from several disabilities/serious health conditions, including degenerative shoulder and back issues, anxiety, and depression – all recognized disabilities under the ADA that impaired several of Plaintiff's daily life activities and/or functions.

86.    In the alternative, Plaintiff was regarded by Defendants as having such impairments.

87.    At all times relevant, however, Plaintiff could perform the essential functions of his position(s) with Defendants with or without an accommodation.

88.    Prior to his requests for accommodations, Plaintiff was performing his work at a satisfactory level and meeting or exceeding the legitimate business expectations of Defendants.

89.    Plaintiff revealed his disabilities/serious health conditions to his supervisors and co-workers, and requested reasonable accommodations, including leave, a job transfer, and light duty restrictive work to treat and manage his disabilities/serious health conditions.

90.    Defendants discriminated and retaliated against Plaintiff by:

- refusing to appropriately engage in a dialogue with Plaintiff with regard to disability accommodation;

- interfering with Plaintiff's federally protected right to seek and take medical leave;

- denying Plaintiff employment opportunities, including Defendants' failure to hire Plaintiff for an open instructor position in 2018;

- refusing to permit Plaintiff to return to work with light duty restrictions; and

- treating Plaintiff differently, and less preferably than similarly situated employees,

ultimately resulting in Plaintiff's unlawful termination from employment.

91.    Defendants would not have terminated Plaintiff's employment, nor taken other discriminatory and retaliatory actions against him, but for Plaintiff's disabilities/serious health conditions and/or requests for reasonable accommodations.

92.    Any reasons given by Defendants for their treatment of Plaintiff were pretextual, as Plaintiff's work performance was excellent.

93.    Plaintiff's termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his disabilities/serious health conditions and/or requests for accommodations.

94.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

95.    At all times material hereto, Defendants engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

96.    The above-described acts by Defendants and employees of Defendants constitute disability discrimination and retaliation in violation of the Americans with

Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADA").

<h2 style="text-align:center">COUNT IV: CLAIM FOR FAILURE<br>TO ACCOMMODATE IN VIOLATION OF THE ADA</h2>

97.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint.

98.     At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability, pursuant to the ADA.

99.     Specifically, and at all times relevant, Plaintiff suffered from several disabilities/serious health conditions, including degenerative shoulder and back issues, anxiety, and depression – all recognized disabilities under the ADA that impaired several of Plaintiff's daily life activities and/or functions.

100.     In the alternative, Plaintiff was regarded by Defendants as having such impairments.

101.     At all times relevant, however, Plaintiff could perform the essential functions of his position(s) with Defendants with or without an accommodation.

102.     Prior to his requests for accommodations, Plaintiff was performing his work at a satisfactory level and meeting or exceeding the legitimate business expectations of Defendants.

103.     Plaintiff revealed his disabilities/serious health conditions to his supervisors and co-workers, and requested reasonable accommodations, including leave, a job transfer, and light duty restrictive work to treat and manage his disabilities/serious health conditions.

104.   Defendants failed to accommodate Plaintiff's disabilities/serious health conditions by:

- refusing to appropriately engage in a dialogue with Plaintiff with regard to disability accommodation;

- interfering with Plaintiff's federally protected right to seek and take medical leave;

- denying Plaintiff employment opportunities, including Defendants' failure to hire Plaintiff for an open instructor position in 2018;

- refusing to permit Plaintiff to return to work with light duty restrictions; and

- treating Plaintiff differently, and less preferably than similarly situated employees,

ultimately resulting in Plaintiff's unlawful termination from employment.

105.   Defendants would not have terminated Plaintiff's employment, nor failed to accommodate him, but for his disabilities/serious health conditions.

106.   Any reasons given by Defendants for their treatment of Plaintiff were pretextual, as Plaintiff's work performance was excellent.

107.   Plaintiff's termination from employment occurred under circumstances that raise a reasonable inference of unlawful failure to accommodate based upon his disabilities/serious health conditions and/or requests for accommodations.

108.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

109.   At all times material hereto, Defendants engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

110.   The above-described acts by Defendants and employees of Defendants constitute failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADA").

## COUNT V: DISCRIMINATION AND RETALIATION
## IN VIOLATION OF VIRGINIA CODE SEC. 40.1-51.2:1

111.   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

112.   Plaintiff engaged in the protected activity of complaining about numerous workplace safety violations to his supervisors.

113.   Upon information and belief, Defendants enacted an illegal retaliatory plan to terminate Plaintiff's employment due to his participation in such statutorily protected activities.

114.   Defendants discriminated and retaliated against Plaintiff in violation of Virginia Code § 40.1-51.2:1 for engaging in protected activities by terminating Plaintiff's employment.

115.   Defendants treated Plaintiff differently, and less favorably, than other employees who had not engaged in such statutorily protected activities.

116.   Based upon the acts and/or omissions of Defendants, Plaintiff suffered discriminatory and retaliatory acts which included, but were not limited to, termination from employment.

117.    All of these acts are in violation of Va. Code § 40.1-51.2:1.

118.    Plaintiff was wrongfully terminated on or about March 14, 2019, predicated upon his complaints of workplace safety in violation of Va. Code § 40.1-51.2:1.

119.    Pursuant to Va. Code § 40.1-51.2:2, Plaintiff has exhausted all administrative remedies.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

120.    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

121.    At all times, through its agents and representatives, Defendants acted intentionally and/or recklessly with regard to the treatment of Plaintiff.

122.    Defendants' conduct was both extreme and outrageous.

123.    Due to the acts and/or omissions of Defendants, Plaintiff has suffered severe emotional distress.

124.    Due to Defendants' actions, Plaintiff has suffered physical symptoms, including an increase in worrying, anxiety, depression, fatigue, insomnia, reduced self-esteem and self-confidence, and other health issues.

125.    The emotional distress was so severe as to physically harm Plaintiff, resulting in the need for professional medical treatment.

126.    Accordingly, Defendants intentionally inflicted emotional distress upon Plaintiff.

## COUNT VII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

127.    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

128.    At all times, Defendants had a duty not to act with such reckless disregard as to cause Plaintiff harm.

129.    Defendants' conduct was both extreme and outrageous.

130.    Due to the acts and/or omissions of Defendants, Plaintiff has suffered severe emotional distress.

131.    The emotional distress was so severe as to physically harm Plaintiff, resulting in the need for professional medical treatment.

132.    Due to Defendants' actions, Plaintiff has suffered physical symptoms, including an increase in worrying, anxiety, depression, fatigue, insomnia, reduced self-esteem and self-confidence, and other health issues.

133.    It was entirely foreseeable that Defendants' acts and/or omissions in the treatment of Plaintiff would result in great emotional harm.

134.    Defendants negligently inflicted emotional distress upon Plaintiff.


WHEREFORE, Plaintiff Ocal R. Smith, II, prays for judgment against Defendant American Electric Power Service Corporation and Defendant Appalachian Power Company, and for equitable relief, compensatory, liquidated and/or punitive damages, together with prejudgment interest from the date of Mr. Smith's termination from employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.


TRIAL BY JURY IS DEMANDED.

                            Respectfully Submitted,

**OCAL R. SMITH, II**

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*